SCANNED

RECEIVED

JUN 03 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

FILED

JUN 03 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

PATRICK M. RYAN (SBN 203215)
  pryan@bzbm.com
STEPHEN C. STEINBERG (SBN 230656)
  ssteinberg@bzbm.com
GABRIELLA A. WILKINS (SBN 306173)
  gwilkins@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Plaintiffs CISCO SYSTEMS, INC.
and CISCO TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**C  21  04272**

RS

| | |
|---|---|
| CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WUHAN WOLON COMMUNICATION TECHNOLOGY CO., LTD. and WUHAN WOLON CLOUD NETWORK COMMUNICATION TECHNOLOGY CO., LTD., <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> 1  **FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING, 15 U.S.C. § 1114;** <br> 2. **FEDERAL UNFAIR COMPETITION, 15 U.S.C. § 1125;** <br> 3. **FEDERAL DILUTION OF MARK, 15 U.S.C. § 1125(c);** <br> 4. **CALIFORNIA FALSE ADVERTISING, CAL. BUS. & PROF. CODE § 17500;** <br> 5. **CALIFORNIA UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200.** <br><br> **[JURY TRIAL DEMANDED]** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco" or "Plaintiffs"), by and through their attorneys, Bartko Zankel Bunzel & Miller, PC, bring this action for damages and injunctive relief against Defendants Wuhan Wolon Communication Technology Co., Ltd. and Wuhan Wolon Cloud Network Communication Technology Co., Ltd. (together, "Wolon" or "Defendants"), allege as follows:

## I.    INTRODUCTION

1.    Counterfeiters are increasingly exploiting consumers' needs for certain products during a time when there are significant halts and delays in production of authentic products, resulting in severe shortages in the marketplace.  The substitution of inauthentic products using counterfeit marks in place of genuine products can be catastrophic, and not just to the interests of businesses that manufacture and sell genuine products using the trademarks they have spent years developing.  Counterfeit products have the potential to be very dangerous.  Specifically, at issue in this case are inauthentic products that could be mistaken as real by Plaintiffs' hospital, military, government, telecommunications, utility, or other critical infrastructure customers.  Not only does this result in innocent customers receiving something fake that they believe to be genuine, but it also exposes sensitive patient, military, and government information to potential breaches, jeopardizes the reliability and performance of critical networks, or worse, puts people in physical danger.  Now more than ever, consumers, companies, and governments need the Courts to intervene to cease this destructive and dangerous behavior.

2.    Plaintiffs bring this urgent action not only to protect their brands, but more importantly to protect their customers, the customers' employees, and the general public from the imminent risk of danger posed by the sale of certain counterfeit products.

3.    Plaintiffs have robust brand protection programs that take multilayered approaches to the problem of counterfeiting, which is global in scope and affects the entirety of the network industry.  Plaintiffs' strategies include collaborating with law enforcement in various countries where counterfeits are made or sold, including both the U.S. and China, to try to shut down larger manufacturers and sellers.  Plaintiffs also employ third-party private investigators or consultants to

Case No. 21-mc-80135-LHK

2
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  identify and purchase suspected inauthentic Cisco products, online.  And Plaintiffs sometimes

2  resort to litigation like the present case in order to protect their rights.

3          4.      This is an action against Defendants for willful and significant infringement of

4  Plaintiffs' trademark rights related to CISCO® branded pluggable transceivers ("Cisco

5  Transceivers").  Put simply, Defendants are marketing and advertising transceivers not

6  manufactured by or associated with Plaintiffs and using Plaintiffs' branding to pass them off

7  and/or to enable Defendants' buyers to pass them off to unsuspecting consumers as Cisco

8  products.

9          5.      Transceivers are electronic devices that transmit and receive communications and

10  data by using fiber optic technology.  Transceivers encode and decode data by converting

11  electrical signals to light pulses and sending data through a fiber optic cable.  The transmitted data

12  is then obtained by the receiving end and converted back into an electrical signal.  Various public

13  and private entities use Cisco Transceivers for their computer network systems, such as healthcare

14  systems and hospitals, the U.S. government and military and other government entities, public

15  transit systems and utilities, Internet Service Providers, wireless phone carriers,

16  telecommunications companies, research and education institutions like universities and colleges,

17  and other large corporations.  The sale of counterfeit transceivers in the marketplace puts

18  Plaintiffs' customers, the customers' employees, and the people they serve, at risk of significant

19  business disruption, privacy and security breaches, data loss, and unpredictable and unsafe

20  technological malfunctions.

21          6.      Defendants are advertising and offering for sale, using, and/or labeling or otherwise

22  marking and/or enabling their buyers to label transceivers (by providing counterfeit labels bearing

23  Plaintiffs' trademarks on separate sheets) with unauthorized representations of Plaintiffs' well-

24  known and federally registered trademarks, and then selling and distributing, or aiding and

25  abetting others in the sale and distribution of, these counterfeit products for ultimate sale to

26  consumers who are unaware that the products are not genuine and may be dangerous.  The

27  customers purchasing these products for end use are duped into believing that the transceivers they

28  receive or that are installed into their networks are genuine Plaintiffs' products when, in fact, they

1 | are not. A thorough inspection reveals that these products are not made with genuine approved

2 | parts, and their functionality is unknown and unpredictable; thus, dangerous.

3 |     7.     Plaintiffs are seeking injunctive and monetary relief to protect their customers, their

4 | customers' employees, various governments and their employees, and the general public, from the

5 | sale of these inauthentic and potentially dangerous goods, to enjoin Defendants from further

6 | unlawful and infringing conduct, and to recover full damages for Defendants' harmful behavior.

7 | **II.**    **THE PARTIES**

8 |     8.     Plaintiff Cisco Systems, Inc. ("CSI") is a Delaware corporation with its principal

9 | place of business at 170 West Tasman Drive, San Jose, California 95134. Plaintiff Cisco

10 | Technology, Inc. ("CTI") is a California corporation with its principal place of business at 170 W.

11 | Tasman Drive, San Jose, California 95134. CTI owns the trademarks used by CSI in marketing

12 | Cisco-branded products.

13 |     9.     On information and belief, Defendants Wuhan Wolon Communication Technology

14 | Co., Ltd. and Wuhan Wolon Cloud Network Communication Technology Co., Ltd. are Chinese

15 | limited companies with the same principal place of business at 19F, Chuangxing Hui Free Trade

16 | Finance Building, No. 777 GuangGu 3rd Road, Donghu New & High Technology Development

17 | Zone, Wuhan City, Hubei Province, China. Wolon conducts business in the United States,

18 | including within the State of California, by offering, selling, and exporting goods to customers in

19 | the Northern District of California and elsewhere in the United States.

20 | **III.**    **JURISDICTION AND VENUE**

21 |     10.    This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051

22 | *et seq.* (the "Lanham Act"), and related causes of action. This Court has subject matter

23 | jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338(a)

24 | and (b).

25 |     11.    This Court has supplemental subject matter jurisdiction over the pendent state law

26 | claims under 28 U.S.C. § 1367, because these claims are so related to Plaintiffs' claims under

27 | federal law that they form part of the same case or controversy and derive from a common nucleus

28 | of operative facts.

Case No. 21-mc-80135-LHK

12.     This Court has personal jurisdiction over each of the Defendants, each of whom has engaged in business activities in this District and the State of California, offered for sale their inauthentic products in this District and the State of California, knowingly and purposefully directed business activities to this District and the State of California, and availed themselves of the benefits afforded by California laws, and committed tortious acts, knowing that Plaintiffs would suffer injuries in this District and the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b-c) in that a substantial part of the events or omissions giving rise to the claims occurred here and Defendants are subject to personal jurisdiction in this District.

### IV.     INTRA-DISTRICT ASSIGNMENT

14.     In accordance with Civil L.R. 3-2(c), this action is properly assigned on a District-wide basis because it relates to intellectual property rights.

### V.     FACTUAL ALLEGATIONS

#### A.     *Cisco's History and Background*

15.     Founded in 1984, Cisco is a worldwide leader in developing, implementing, and providing the technologies behind networking communications, and information technology products and services.  Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, private businesses—including healthcare systems, Internet Service Providers, and wireless carriers—and public institutions, including government agencies and the military.  The thousands of engineers who work at Cisco develop and create networking and communications hardware, software, and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.

16.     Cisco has sold networking equipment, including transceiver modules, since 1992.  The transceivers that Cisco markets and sells are central to these systems.  Cisco Transceivers are known in the market as reliable, high-quality products.  Cisco ships over 10 million transceivers per year.

17.     Cisco has established goodwill and a lauded reputation among the general public and its customers for its high-quality and reliable products by using its well-known Cisco trade name and trademarks.

**B.**     *Cisco's Trademarks*

18.     Cisco is the owner of the following relevant trademarks, all of which Cisco has registered with the Principal Register of the U.S. Patent and Trademark Office in connection with its various products (collectively, "Cisco Marks" or "Plaintiffs' Marks"):

- "CISCO" (U.S. Trademark Reg. Nos. 1,542,339; 2,498,746; 3,709,076; 3,978,294; 3,985,844; 3,990,147; 4,005,670)

- ı|ııı|ıı cısco (U.S. Trademark Reg. No. 3,759,451)

19.     For over 30 years, Cisco has continuously used one or more of the Cisco Marks on its products in commerce. To this day, all Cisco products, including Cisco Transceivers, bear one or more of the Cisco Marks.

20.     The Cisco Marks are distinctive and serve solely to identify and promote Cisco's genuine products and well-known brand. Cisco invests significant resources in extensive research, advertisement, and promotional efforts for the Cisco Marks. For decades, the Cisco Marks have been advertised and sold around the globe, resulting in widespread brand recognition.

**C.**     *Cisco's Quality Control Measures*

21.     Cisco manufactures and sells various types of transceivers. Each is designed to exceed industry standards for safety, quality, reliability, and performance.

22.     Cisco Transceivers are manufactured by one of three authorized third-party original equipment manufacturers ("OEMs").

23.     Cisco's OEMs are required to follow strict quality-and-control standards, which govern the design of the product, the selection of components, the conditions of the production facility, and ongoing reliability testing, audits, and recordkeeping.

24.     Cisco requires all OEMs to adhere to high-quality manufacturing and distribution standards. These standards ensure that the product meets feature specifications. Throughout the

1  product's lifecycle, Cisco monitors each OEM's compliance with its quality-and-control
2  standards.

3       25.    Each of the OEM facilities is regularly audited.  The OEMs maintain detailed
4  production records for each serialized product and keep logs of each product's supply chain.  This
5  gives Cisco the ability to trace products using their serial number.  Each quarter, the OEMs
6  participate in business reviews that thoroughly examine the manufacturer's practices and
7  procedures and identify areas for improvement.

8       26.    Before its products are approved for shipment, Cisco conducts reliability testing to
9  uncover any undetected defects caused by the manufacturing process.



16      28.

23      D.    *Counterfeiting Harms Plaintiffs, Consumers, Their Employees, and the Public*

24      29.    Defendants are advertising and offering to sell, using, and/or have sold and
25  distributed products that bear confusingly similar imitations of the Cisco Marks.  Through these
26  sales, Defendants are intentionally deceiving customers into believing that they are purchasing and
27  receiving products that are developed, manufactured, and screened by Plaintiffs or another party
28  legitimately associated with or affiliated with, or authorized, licensed, or approved by Plaintiffs.

30.     Beyond being inauthentic, the functionality, performance, and safety of these products is unknown and less reliable.  These products have a higher probability of failing, degrading, malfunctioning, jeopardizing data security, and/or performing in an unsafe manner.

31.     Plaintiffs have no control over these products and have no way of testing the safety of these products.  These products are not subjected to Plaintiffs' quality-control standards and testing.

32.     Customers are likely to associate the negative qualities of inauthentic products with Plaintiffs' products.  This does irreparable harm to Plaintiffs by tarnishing the good names and reputations they have worked so hard to build and sustain.  Further, the sale of these counterfeit goods deprives Plaintiffs of legitimate sales and revenue.

33.     Customers are also irreparably harmed by Defendants' conduct because they receive inauthentic products, which are at risk of being lower quality, less reliable, and less safe than the high-quality and genuine Cisco products they expect and deserve.

34.     Six important industries comprise the majority of Cisco's customers: healthcare and hospitals, the U.S. government, utility companies, financial services, transportation companies, and communications providers.  All of these entities rely on Cisco Transceivers to transfer data and communications and for data storage and security.  They also count on Cisco Transceivers to perform critical functions for their employees, customers, and the general public.

35.     By way of example, the criticality of Cisco's products is exemplified by the U.S. military's use of these products, including depending on these products to protect lives.  For example, in *United States v. Ehab Ashoor,* No. H-09CR-307 (S.D. Tex.), a criminal action brought by the U.S. government against a counterfeiter of Cisco products, U.S. Marines Staff Sergeant Lee Chieffalo testified that "[t]he Marine Corps' network infrastructure is solely Cisco equipment." Mr. Chieffalo explained that since Cisco equipment only operates properly in conjunction with other authentic Cisco products, the danger of acquiring and using a counterfeit Cisco product could be detrimental to the entire Cisco-based classified network the Marine Corps utilizes.  The potential catastrophic risk was described as, "[m]arines could die."

1   36.   The danger of counterfeit products has long been recognized as a national-security

2   concern.  From 2005 until 2010, the U.S. Department of Justice, together with the Federal Bureau

3   of Investigation ("FBI"), Department of Homeland Security, various Office of Inspector General

4   offices and other governmental departments, conducted a widescale investigation into counterfeit

5   Cisco products, known as "Operation Network Raider."  This was a domestic and international

6   initiative "targeting the illegal distribution of counterfeit network hardware manufactured in

7   China," according to a March 2010 Department of Justice press release.

8   37.   By March 2010, Operation Network Raider had resulted in 30 felony convictions

9   and more than 700 seizures of counterfeit Cisco network hardware and labels with an estimated

10   retail value of more than $143 million.  As stated by Assistant Attorney General Breuer,

11   "[t]rafficking in counterfeit computer components is a problem that spans the globe and impacts

12   most, if not all, major network equipment manufacturers."

13   38.   Investigations like this demonstrate the grave danger to employees of Plaintiffs'

14   customers that is posed by counterfeiters of Plaintiffs' products.  Assistant Security of Homeland

15   Security John Morton highlighted this point by stating, "[t]hese cases involve greedy businessmen

16   hocking counterfeit and substandard hardware to any buyer—whether it could affect the health

17   and safety of others in a hospital setting or the security of our troops on the battlefield" and "[t]hey

18   pose a triple threat to our nation by stealing from our economy, threatening U.S. jobs and

19   potentially putting the safety of our citizens at risk."

20   E.   *Cisco's Discovery of Defendants' Counterfeit Products*

21   39.   Because the counterfeit problem is so vast and serious, Cisco also conducts its own

22   internal processes to combat counterfeiters by investigating and policing suspect counterfeit

23   products.  As part of these efforts, Cisco employs third-party private investigators or consultants to

24   identify and purchase suspected inauthentic Cisco products.

25   40.   And so it is here.  Cisco's consultants found Defendants advertising and offering

26   for sale purported Cisco Transceivers online, and purchased samples of such products from

27   Defendants, who then sent these products to an address in the Northern District of California.

28

Case No. 21-mc-80135-LHK

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    41.    To investigate potentially counterfeit goods, Cisco utilizes three lab facilities

2  located in The Netherlands, Hong Kong, and San Jose, California, and during the COVID-19

3  crisis, select Cisco investigators have home labs for use in these investigations.  Only select

4  members of the Cisco Brand Protection team are allowed access to the products under

5  investigation to ensure the proper chain-of-custody and to prohibit any tampering with the

6  products during the investigation process.

7    42.    Once the products were received from Defendants, the consultants sent the

8  purported Cisco Transceivers to Cisco's engineering investigator for testing.  A strict chain-of-

9  custody was followed throughout the entire transfer process.  Cisco's engineering investigator then

10  used specialized tools to assess each product's authenticity.  The products at issue here were

11  determined to be inauthentic.  The engineering investigator's findings for these products are

12  detailed in an Executive Summary Report ("ESR").

13    43.    After conducting its testing, Cisco shared the pertinent data for each product,

14  including photographs, with the OEM identified by the counterfeit label, if any.  An internal test

15  engineer for the OEM then separately evaluated whether the product was authentic.  The OEM's

16  findings for these products are also detailed in an ESR.  The ESR demonstrates that the OEM

17  agreed with Cisco's assessment that the products are inauthentic.

18                        F.    *Defendants' Unlawful Conduct*

19    44.    Wolon advertises numerous transceivers as being made by Cisco, "compatible with

20  Cisco" and/or "Cisco compatible," and/or using well-known Cisco part numbers, with images of

21  Cisco-marked transceivers, including the GLC-LH-SMD, another of the best-known and best-

22  selling Cisco Transceivers.  A consultant in the Northern District of California purchased 200

23  units of the GLC-LH-SMD, after corresponding through Wolon's Alibaba storefront and also by

24  email through the domain sales01@wolonte.com.

25    45.    This product was advertised and offered for sale as being "Cisco compatible" and

26  using a well-known Cisco part number, and in response to the initial inquiry, Wolon immediately

27  said it would "print cisco label[s]" that "you can stick [on] yourself," thereby ensuring that the

28

1  products could be resold to end customers as genuine Cisco Transceivers.  The invoice for the

2  transceivers included an image of the product with the Cisco-brand label applied as follows:



10      46.      When the transceivers arrived, they were unlabeled but included sheets of labels

11  with counterfeit Cisco Marks, including enough to label each of the transceivers, a sample of

12  which is shown below:

26      47.      Each transceiver also had ████████████████████████

27  ████████████████████████████████████████████████████

28      48.      Each product was determined by Cisco's engineer to be inauthentic.

Case No. 21-mc-80135-LHK

49.     Cisco's engineer determined that the purported Cisco Transceivers sold by Wolon differ from authentic Cisco products in at least the following ways:



d.      The transceivers and labels were separate from each other, whereas genuine Cisco Transceivers are only shipped with labels already affixed to the products at the factory to ensure every product bears the Cisco logo prior to shipment.

### FIRST CLAIM FOR RELIEF

*Federal Trademark Infringement and Counterfeiting*

**(15 U.S.C. § 1114 [Lanham Act § 32] Against All Defendants)**

50.     Plaintiffs hereby incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

51.     Plaintiffs' Marks are all valid marks entitled to protection under the Lanham Act and registered on the principal register in the United States Patent and Trademark Office. Plaintiffs are the exclusive owners and registrants of their individual marks.

52.     Without Plaintiffs' consent or authorization, Defendants are using, and will continue to use, in commerce, reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' Marks in connection with the sale, offering for sale, distribution, or advertising of counterfeit and/or inauthentic Cisco Transceivers.

53.     Without Plaintiffs' consent or authorization, Defendants are reproducing, counterfeiting, copying, or colorably imitating Plaintiffs' Marks and applying them to labels

1 and/or advertisements intended to be used in commerce upon or in connection with the sale,

2 offering for sale, distribution, or advertising of counterfeit and/or inauthentic Cisco Transceivers.

3      54. Defendants' counterfeiting and infringing activities have caused, are causing, or are

4 likely to cause, confusion, mistake, and deception among the consuming public as to the origin,

5 sponsorship, and quality of Defendants' counterfeit products.

6      55. On information and belief, Plaintiffs allege that Defendants' conduct was

7 committed willfully, in bad faith, and with knowledge of Plaintiffs' exclusive rights to their marks,

8 or with willful blindness to the same, and with the intent to cause confusion, mistake, and/or to

9 deceive.

10      56. As a direct and proximate result of Defendants' counterfeiting and infringing

11 activities, Plaintiffs have suffered irreparable harm and damage to their valuable marks—and

12 damage to their reputation and goodwill—to which there is no adequate remedy at law.  This

13 irreparable harm will continue unless Defendants' conduct is stopped.

14      57. Plaintiffs are entitled to injunctive relief against Defendants pursuant to 15 U.S.C.

15 § 1116(a), an order for the destruction of all infringing goods, as well as all monetary relief and

16 other remedies available under the Lanham Act, including, but not limited to, treble damages

17 and/or profits, statutory damages, reasonable attorneys' fees, costs, and prejudgment interest under

18 15 U.S.C. § 1117(a).

19 **SECOND CLAIM FOR RELIEF**

20 ***Federal Unfair Competition***

21 **(False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a),**

22 **[Lanham Act § 43(a)] Against All Defendants)**

23      58. Plaintiffs hereby incorporate by reference each of the allegations in the preceding

24 paragraphs of this Complaint as if fully set forth herein.

25      59. Defendants, in the connection with the sale of inauthentic Cisco Transceivers,

26 falsely describe the origin of and/or use misleading descriptions and representations of fact in

27 commerce.

28

Case No. 21-mc-80135-LHK

2790.000/1626806.1

13

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

60.     Defendants' unauthorized conduct has caused, is likely to cause, and will continue to cause, confusion or mistake, or has deceived, is likely to deceive, and will continue to deceive, consumers as to Defendants' products' affiliation, connection, sponsorship, approval, origin, or association with Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

61.     Defendants misrepresent the nature, characteristics, qualities, and/or geographic origin of their inauthentic products in commercial advertising or promotion, in violation of 15 U.S.C. § 1125(a)(1)(B).

62.     Plaintiffs are entitled to recover Defendants' unlawful profits and Plaintiffs' damages, including attorneys' fees under 15 U.S.C. § 1117(a).

63.     Defendants' willful and intentional conduct is in violation of 15 U.S.C. § 1114(1), and Plaintiffs are entitled to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

64.     Defendants' conduct will continue to cause substantial and irreparable injury to Plaintiffs and their businesses and goodwill.  Plaintiffs have no adequate remedy at law and are thus entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

### THIRD CLAIM FOR RELIEF

#### *Federal Dilution of Mark*

#### (15 U.S.C. § 1125(c) [Lanham Act § 43(c)] Against All Defendants)

65.     Plaintiffs hereby incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

66.     Plaintiffs' Marks are famous, distinctive, and widely recognized by the consuming public, pursuant to 15 U.S.C. § 1125(c).

67.     Defendants' use of marks or trade names in commerce is likely to cause dilution of Plaintiffs' Marks in violation of 15 U.S.C. § 1125(c).

68.     Plaintiffs are entitled to injunctive relief to stop the dilution of their marks, pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

Case No. 21-mc-80135-LHK

## FOURTH CLAIM FOR RELIEF

### *California False Advertising*

**(Cal. Bus. & Prof. Code § 17500 Against All Defendants)**

69.     Plaintiffs hereby incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

70.     Defendants have knowingly or willfully made false or misleading statements in connection with the sale of their inauthentic products.

71.     In advertising and promoting their products, Defendants knew or, with the exercise of reasonable care, should have known, that their statements were false and misleading.

72.     As a direct, proximate, and foreseeable result of Defendants making these false and misleading statements, Plaintiffs have suffered, and will continue to suffer, irreparable harm to its individual brands, reputations, and goodwill.  Plaintiffs have no adequate remedy at law to compensate for these substantial injuries and is thus entitled to injunctive relief.

73.     As a direct, proximate, and foreseeable result of Defendants making these false and misleading statements, Plaintiffs have suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### *California Unfair Competition*

**(Cal. Bus. & Prof. Code § 17200 Against All Defendants)**

74.     Plaintiffs hereby incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

75.     Defendants have knowingly and willfully participated in unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17200, by advertising and selling inauthentic products using counterfeit Plaintiffs' Marks, in violation of the Lanham Act, 15 U.S.C. § 1114, as well as the other acts alleged herein.

76.     As a direct, proximate, and foreseeable result of Defendants' unfair and deceptive conduct, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their individual

1 | brands, reputations, and goodwill.  Plaintiffs have no adequate remedy at law to compensate for

2 | these substantial injuries and are thus entitled to injunctive relief.

3 | 77.   As a direct, proximate, and foreseeable result of Defendants' unfair and deceptive

4 | conduct, Plaintiffs have suffered, and will continue to suffer, lost business and revenue.  Plaintiffs

5 | are entitled to restitution damages in an amount to be proven at trial.

6 | **PRAYER FOR RELIEF**

7 | WHEREFORE, Plaintiffs respectfully pray for the following relief:

8 | A.   Judgment in favor of Plaintiffs that Defendants infringed Plaintiffs' trademark

9 | rights under 15 U.S.C. § 1114;

10 | B.   Judgment in favor of Plaintiffs that Defendants competed unfairly with Plaintiffs,

11 | in violation of Plaintiffs' rights under common law, 15 U.S.C. § 1125(a), and/or California Bus. &

12 | Prof. Code § 17200;

13 | C.   Judgment in favor of Plaintiffs that Defendants' conduct is likely to dilute

14 | Plaintiffs' famous marks in violation of Plaintiffs' rights under 15 U.S.C. § 1125(c);

15 | D.   Judgment in favor of Plaintiffs that Defendants made false and misleading

16 | statements about and falsely and misleadingly advertised their counterfeit products, in violation of

17 | Plaintiffs' rights under California Bus. & Prof. Code § 17500;

18 | E.   A temporary restraining order and preliminary and permanent injunction enjoining

19 | Defendants and their subsidiaries, parents, agents, officers, members, directors, servants,

20 | employees, attorneys, successors, assigns, affiliates, and joint ventures, and any person(s) in active

21 | concert or participation with them, and/or any person(s) acting for, with, by, through, or under

22 | them, from:

23 | a.   Manufacturing, producing, sourcing, importing, exporting, selling, offering to

24 | sell, distributing, licensing, promoting, or labeling any goods that display any

25 | words, symbols, or designs that resemble or replicate Plaintiffs' Marks, or are

26 | likely to cause confusion, mistake or deception of, or in connection with, any of

27 | Plaintiffs' products, whether genuine or counterfeit;

28 |

Case No. 21-mc-80135-LHK

2790.000/1626806.1

16

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

b. Using any logo, trade name, trademark, symbol, term, name, word, representation, or combination thereof, that causes, or is likely to cause, confusion, mistake, or deception as to the origin, ownership, affiliation, sponsorship, association, or connection, in any way, of Plaintiffs or their products, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertisement of the same;

c. Destroying any documentation or record of the manufacture, sale, offer of sale, communication regarding, advertisement, distribution, shipment, receipt, or payment of, any product that Defendants represented as one of Plaintiffs' products;

d. Infringing the rights of Plaintiffs, in and to any use of Plaintiffs' Marks or otherwise damaging Plaintiffs' goodwill, name, and/or business reputation;

e. Diluting Plaintiffs' Marks;

f. Promoting the sale of any goods or services by associating the same, genuine or otherwise, with Plaintiffs or Plaintiffs' Marks;

g. Competing unfairly in any manner with Plaintiffs; and

h. Assisting, aiding, abetting, or working with any other person or business to engage or participate in any of the above listed activities as referenced in subparagraphs (a) through (g).

F. An order that Defendants must immediately produce to Plaintiffs a complete list of all individuals, businesses, and entities from whom they purchased, and to whom they sold, offered to sell, or distributed, the infringing products at issue in this Complaint, including for each the products and respective quantities and amounts paid;

G. Judgment that Defendants immediately transfer to Plaintiffs their entire inventory of infringing products, including, but not limited to, transceivers that are in their possession or under their control, that bear Plaintiffs' Marks or anything resembling Plaintiffs' Marks;

H. Plaintiffs to recover all damages and lost profits in an amount to be proven at trial;

I. Plaintiffs to be awarded punitive damages from each Defendant;

Case No. 21-mc-80135-LHK

1       J.    An accounting of each Defendant's profits attributable to their illegal and

2  infringing acts and an award of: (1) Defendants' profits; and (2) all of Plaintiffs' damages pursuant

3  to 15 U.S.C. § 1117;

4       K.    Plaintiffs to be awarded all of Defendants' ill-gotten profits and gains, and/or any

5  other unjust benefits received by Defendants from Defendants' manufacture, sale, and/or

6  distribution of counterfeit Plaintiffs' products;

7       L.    Statutory damages;

8       M.    Treble damages and/or enhanced damages;

9       N.    An order to freeze Defendants' assets pending a final determination of liability and

10  damages;

11       O.    An order for an accounting of and imposition of a constructive trust on all of

12  Defendants' funds and assets connected to their infringing acts;

13       P.    Pre- and post-judgment interest;

14       Q.    All reasonable attorneys' fees, costs, and investigative expenses associated with

15  Defendants' infringing acts; and

16       R.    Any and all other relief the Court deems just, proper, fair, and equitable.

17                       **DEMAND FOR JURY TRIAL**

18       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by

19  jury of all claims asserted in this Complaint so triable in this action.

20

21  DATED:  May 27, 2021               Respectfully submitted,

22                              BARTKO ZANKEL BUNZEL & MILLER

23                              A Professional Law Corporation

24

25                  By:  _____*/s/ Stephen C. Steinberg*_____

                                STEPHEN C. STEINBERG

26                               Attorneys for Plaintiffs

27                               CISCO SYSTEMS, INC. and

                               CISCO TECHNOLOGY, INC.

28