1  PATRICK M. RYAN (SBN 203215)
     *pryan@bzbm.com*
2  STEPHEN C. STEINBERG (SBN 230656)
     *ssteinberg@bzbm.com*
3  GABRIELLA A. WILKINS (SBN 306173)
     *gwilkins@bzbm.com*
4  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
5  One Embarcadero Center, Suite 800
   San Francisco, California 94111
6  Telephone: (415) 956-1900
   Facsimile:  (415) 956-1152
7
8  Attorneys for Plaintiffs CISCO SYSTEMS, INC.,
   CISCO TECHNOLOGY, INC. and CIENA
9  CORPORATION
10
                    UNITED STATES DISTRICT COURT
11
        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
12
13
   CISCO SYSTEMS, INC.; CISCO              Case No. 5:21-cv-04272-EJD
14 TECHNOLOGY, INC.; and CIENA
   CORPORATION,                            **[PROPOSED] ORDER GRANTING**
15                                         **PLAINTIFF CIENA CORPORATION'S**
                                           **EMERGENCY *EX PARTE* MOTION FOR**
16          Plaintiffs,                    **TEMPORARY RESTRAINING ORDER,**
                                           **ASSET FREEZE ORDER, EXPEDITED**
17       v.                                **DISCOVERY, ORDER AUTHORIZING**
                                           **ALTERNATIVE SERVICE OF PROCESS,**
18 WUHAN WOLON COMMUNICATION               **AND ORDER TO SHOW CAUSE RE:**
   TECHNOLOGY CO., LTD. and WUHAN          **PRELIMINARY INJUNCTION**
19 WOLON CLOUD NETWORK
   COMMUNICATION TECHNOLOGY CO.,           **[RE: ECF 38]**
20 LTD.,
21          Defendants.
22
23
24
25
26
27
28

2790.000/1644566.1                                    Case No. 5:21-cv-04272-EJD
[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

1    Pending before the Court is Plaintiff Ciena Corporation's ("Ciena") *ex parte* motion for a

2    temporary restraining order, an order to show cause, an order freezing Defendants Wuhan Wolon

3    Communication Technology Co., Ltd. and Wuhan Wolon Cloud Network Communication

4    Technology Co., Ltd.'s (together, "Wolon") assets, expedited discovery, and an order authorizing

5    alternative service of process by email. The Court has reviewed Ciena's motion papers and ~~[held~~

6    ~~an *ex parte* hearing on _____/~~ exercised its discretion to enter this ruling without a

7    hearing~~]~~. Because Ciena moved *ex parte*, requesting that no notice be provided and said request is

8    granted herein, Wolon was not heard.

9    For the reasons set forth herein, Ciena's motion is GRANTED as further described in this

10    "Order."

11    **I.     BACKGROUND**

12    **A.     Ciena and Its Transceivers**

13    Ciena is a national and world leader in developing, designing, manufacturing, and

14    providing telecommunications networking software, services, and equipment, including

15    transceivers—devices that transmit and receive data ("Ciena Transceivers"). 7/20/21 Decl. of First

16    Witness ("Decl. No. 1")[1] ¶ 5, ECF No. __; *see* 7/9/21 Decl. of Second Witness ("Decl. No. 2") ¶ 7,

17    ECF No __. A variety of U.S. industries, including federal and state government entities,

18    telecommunications companies, research and education institutions like universities and colleges,

19    utility companies, and major healthcare centers, rely on Ciena Transceivers to perform critical

20    applications, and ensure the integrity of data transfer and communications. *See* Decl. No. 1 ¶ 12.

21    Transceivers are electronic devices that transmit and receive data. *See* Decl. No. 2 ¶ 7. A

22    transceiver encodes and decodes data by converting an electrical signal into light pulses and back

23    again, which are sent through a fiber optic cable. *Id.* Transceivers provide the vital connections in

24    networks. *See* Decl. No. 1 ¶ 11. The quality and performance of networks in the U.S. and around

25    the world depend on authentic and high-quality Ciena transceivers. *Id.* ¶¶ 11-12.

26

27    _____

[1] To avoid revealing the identities of the Ciena personnel conducting the investigation and the

28    consultants participating in the investigation, the names of the declarants are undisclosed herein,
and have been replaced with the number of the declaration in order of filing, as the names have
been sealed pursuant to an Order entered contemporaneous with this opinion.

Ciena sells a range of transceivers varying in size, functionality, and price. *See* Decl. No. 2 ¶ 7. Ciena designs all of its transceivers to meet and exceed industry standards for quality, reliability, safety, and performance, which vary depending on the industry. *Id.* A variety of U.S. industries, federal and state government entities, telecommunications companies, research and education institutions like universities and colleges, utility companies, and major healthcare centers, rely on Ciena Transceivers to perform critical applications, and ensure the integrity of data transfer and communications. *See* Decl. No. 1 ¶ 12.

Ciena has invested heavily in the CIENA brand, which includes the "CIENA" word mark, which is registered with the U.S. Patent and Trademark Office under U.S. Trademark Registration Nos. 2,070,330 and 3,026,860, and the following CIENA logo (together, the "CIENA Marks"):



*Id.* ¶¶ 6-10, Ex. 1A. Ciena has used, and is currently using, the CIENA Marks continuously and exclusively in commerce, including in connection with its sale of Ciena Transceivers, and plans to continue such use in the future. *Id.* ¶ 8.

Ciena prominently displays the CIENA Marks in its advertising materials, and as a result, the CIENA Marks are widely recognized and well-known to the public, and are synonymous with reliable, high-quality networking hardware products. *Id.* ¶ 9. Ciena has spent, and continues to spend, millions of dollars marketing and promoting in interstate commerce its products in connection with the CIENA Marks. *Id.* Due to Ciena's longtime use of and investment in the CIENA Marks and the quality of Ciena's products, the Ciena brand has built up a tremendous amount of consumer goodwill. *Id.* ¶ 10. The CIENA Marks symbolize this goodwill, and are invaluable assets to Ciena. *Id.*

Authentic Ciena Transceivers are manufactured by well-vetted third-party vendors called original equipment manufacturers ("OEMs"). *See* Decl. No. 2 ¶ 8. Each of these OEMs utilize specialized equipment and heavily tested processes to produce consistent, high-performing products on which users rely. *Id.* Ciena requires its OEMs to follow strict quality and control

standards that govern the entire lifecycle of each transceiver. *Id.* ¶ 9. Each model undergoes multiple kinds of testing before going into production. Each OEM must maintain ongoing reliability monitoring and is subject to stringent audits and regular business reviews to ensure quality standards continue to be met and to identify areas for improvement. *Id.* And OEMs must maintain detailed records for each product and its movement through the supply chain to enable Ciena to support customers via serial number traceability. *Id.*

Wolon is a company based in China. As part of Ciena's anti-counterfeiting efforts, Ciena's consultant discovered that Wolon was offering purported Ciena Transceivers online to U.S. customers. *See* 7/1/21 Decl. of Third Witness ("Decl. No. 3") ¶¶ 3-4, 6-8, ECF __. Ciena's consultant attests to having purchased purported Ciena transceivers and labels from Wolon, who then shipped the transceivers to this District. *Id.* ¶¶ 7-19. Ciena attests that it analyzed and tested these purported Ciena transceivers and labels and confirmed that they were inauthentic in that they were not made by or associated with Ciena. *See* Decl. No. 2 ¶¶ 13-19.

Ciena presented evidence that Wolon's counterfeit transceivers are offered for sale and/or sold with product labels with counterfeit CIENA Marks referenced above, and/or are otherwise designed to create the impression that they are authentic Ciena transceivers. Ciena attests that examination also revealed that the design and construction of the counterfeit Ciena Transceivers sold by Wolon did not match that of genuine Ciena Transceivers.

**B.    Discovery and Examination of Counterfeit Ciena Transceivers**

Certain details of Ciena's investigation and examination are sealed; thus, this order does not refer to them with specificity.

The success of Ciena's brand has attracted criminal counterfeiters who illegally profit by selling fake Ciena products. To combat this, Ciena investigates suspicious listings in online marketplaces, and in this case, arranged for a consultant to buy suspect Ciena transceivers from Wolon. *See* Decl. No. 2 ¶ 13; Decl. No. 3 ¶¶ 3-4, 6.

Ciena has engineers who can test and analyze potentially counterfeit products, using specialized tools and product data to compare suspect products with authentic products. *See* Decl. No. 2 ¶¶ 10-12. Wolon delivered transceivers and labels with the CIENA Marks purchased by

1   Ciena's consultants to an address in this District, and the consultants then shipped such products

2   and labels to Ciena for examination. *Id.* ¶ 13-16; Decl. No. 3 ¶¶ 5, 19.

3        A Ciena engineer examined five (5) samples of the transceivers received from Wolon to

4   determine whether they were genuine. *See generally* Decl. No. 2. As set forth below, Ciena's

5   engineer personally evaluated each product using Ciena's standard techniques for evaluating

6   potential counterfeits, and in each case determined that Wolon's product was, in fact, inauthentic

7   in that it was indisputable that it had not been manufactured by Ciena or by someone associated

8   with Ciena. *Id.* This analysis was set forth in Ciena's engineer's declaration, and it shows that the

9   Ciena transceivers from Wolon are inauthentic. *Id.* The findings are summarized below.

10        In April 2021, Ciena's consultant ordered 200 units of purported Ciena XCVR-A10Y31

11   transceivers with Ciena labels from Wolon. *See* Decl. No. 3 ¶¶ 7-13. Wolon repeatedly sent

12   pictures of such products and labels showing the CIENA Marks before the purchase was finalized

13   and payment was made. *Id.* In May 2021, Wolon sent the transceivers and labels with the CIENA

14   Marks to Ciena's consultant in this District. *Id.* ¶¶ 15-17. Ciena's consultant then sent the

15   purported Ciena Transceivers to Ciena for examination. *See id.* ¶ 5, 19; Decl. No. 2 ¶¶ 13-16.

16        On June 23, 2021, Ciena's engineer examined samples of the suspect Ciena Transceivers

17   and labels received from Wolon. *See* Decl. No. 2 ¶ 17. Each label had the Ciena name and logo, as

18   well as Ciena Part Number XCVR-A10Y31. *Id.*; Decl. No. 3 ¶¶ 16-17. Each transceiver also had

19   an internal memory chip that contained data designed to make the product appear to have been

20   made by Ciena. *See* Decl. No. 2 ¶ 18. But Ciena's engineer confirmed that the products were

21   clearly inauthentic in that they were not manufactured by Ciena or by someone associated with

22   Ciena in light of the many differences between them and authentic Ciena Transceivers. *Id.* ¶¶ 17-

23   19.

24        Based on these findings, Ciena has now joined Cisco in filing a First Amended Complaint

25   against Wolon for Trademark Infringement (15 U.S.C. § 1114–1117), Dilution of Mark (15 U.S.C.

26   § 1125), and Unfair Competition (15 U.S.C. § 1125), as well as California law claims for False

27   Advertising (Cal. Bus. & Prof. Code § 17500) and Unfair Competition (Cal. Bus. & Prof. Code

28   § 17200). Ciena moves *ex parte* for a temporary restraining order, order to show cause, seizure

1  order, expedited discovery, an order freezing Wolon's assets, and an order authorizing it to serve

2  Wolon by email.

3        For the reasons expressed below, Ciena's motion is GRANTED.

4  **II.**      **LEGAL STANDARD**

5        **A.**      **Notice**

6        This Court may issue a TRO without notice to the adverse party if (1) "specific facts in an

7  affidavit or a verified complaint" show that immediate and irreparable injury will occur before the

8  adverse party can be heard and (2) the movant's attorney certifies in writing what efforts were

9  made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b).

10        The Ninth Circuit recognizes the issuance of an *ex parte* TRO is warranted where notice to

11  the defendant would render further prosecution fruitless, e.g. "[i]n the trademark arena, such cases

12  include situations where an alleged infringer is likely to dispose of the infringing goods before the

13  hearing." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An

14  applicant can justify excusal of the notice requirement on this ground by showing "that the adverse

15  party has a history of disposing of evidence or violating court orders or that persons similar to the

16  adverse party have such a history." *Id.* (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d

17  641, 651 (6th Cir.1993)).

18        The Court finds *Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co., LTD*

19  (*Talavera*) instructive. No. 18–CV–823–JLS (JLB), 2018 WL 3413866 (S.D. Cal. May 10, 2018).

20  There, the defendants sold their infringing products through online eCommerce marketplaces

21  including Amazon and eBay, and the plaintiff had tried to stop similar sellers, only to see the same

22  goods reappear under new sellers. *Id.* at *4. *Talavera* also noted nine other cases where TROs

23  were granted against similar online infringers who used eCommerce marketplaces to sell their

24  infringing products. *Id.* Thus, the court found that notice to the defendants would likely result in

25  the disappearance or transfer of the counterfeit products, so notice was not required and the

26  plaintiff could proceed *ex parte*. *Id.*

27        Similarly, *Gucci Am., Inc. v. Los Altos Boots, Inc.* supports the Court's decision to excuse

28  notice here. No. CV1406680BROAJWX, 2014 WL 12561613 (C.D. Cal. Aug. 27, 2014). There,

1   the court excused the plaintiff from providing notice before issuing a TRO because: 1) the

2   defendant could easily conceal the counterfeit goods and related records given their nature and

3   location outside the U.S.; and 2) similarly situated defendants in trademark infringement cases

4   have a history of ignoring court orders to preserve and instead destroying evidence after *ex parte*

5   TROs and seizure orders were denied. *Id.* at *3–4.

6        The Court also notes that it relieved Ciena from giving notice in a case that was

7   substantially similar to the present one. *See Cisco Systems, Inc. v. Shenzhen Usource Technology

8   Co.*, No. 5:20-CV-04773-EJD, 2020 WL 4196273, **4-5 (N.D. Cal., July 20, 2020).

9        Here, as explained in greater detail below, Ciena has presented substantial evidence that

10  Wolon likewise is willfully offering and selling transceivers using counterfeit CIENA Marks,

11  largely through third-party eCommerce websites like Alibaba, and are able and likely to dispose of

12  evidence if given advance notice of the present motion. For good cause shown, Ciena is relieved

13  from giving notice to Wolon.

14       **B.    Standard for Issuing TRO**

15       The standard for issuing a TRO is identical to the standard for a preliminary injunction.

16  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001);

17  *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A

18  plaintiff seeking preliminary injunctive relief must establish that: (1) "[it] is likely to succeed on

19  the merits"; (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief"; (3)

20  "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter

21  v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that

22  there are serious questions going to the merits—a lesser showing than likelihood of success on the

23  merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the

24  plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v.

25  Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted)

26  (emphasis in original).

27       Preliminary injunctions are routinely granted in cases involving trademark infringement.

28  The principle "that trademark infringement causes irreparable injury and necessitates immediate

1  injunctive relief" is well settled and "is universally recognized in the courts of [the Ninth] circuit."

2  *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530, *7 (N.D. Cal. Jan. 28, 1981).

3  **III.     DISCUSSION**

4        **A.     Temporary Restraining Order**

5        As described above, a court's decision to grant a TRO is governed by four factors:

6  (1) whether the applicant is likely to succeed on the merits of his action; (2) whether the applicant

7  is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of

8  equities tip in the applicant's favor; (4) and that an injunction is in the public interest. The Court

9  discusses each in turn.

10        **1.     Likelihood of Success**

11        Ciena asserts federal claims for trademark infringement, counterfeiting, and false

12  designation of origin and advertising under the federal Lanham Act, as well as claims for unfair

13  competition and false advertising under California state law, against Wolon. Ciena has

14  demonstrated a likelihood of success with respect to all its claims.

15        **a.     Federal Claims**

16        A plaintiff claiming trademark infringement under the Lanham Act must show that it

17  "owns a valid mark, and thus a protectable interest" and that a defendant's "use of the mark is

18  likely to cause confusion, or to cause mistake, or to deceive." *Lahoti v. VeriCheck, Inc.*, 586 F.3d

19  1190, 1196 (9th Cir. 2009) (internal quotation omitted); *see also* 15 U.S.C. § 1114(1).

20        Ciena has established that it owns federal trademark registrations for the CIENA Marks.

21  Decl. No. 1 ¶¶ 6-10, Ex. 1A. Ciena has also shown that Wolon is using those marks in connection

22  with selling counterfeit Ciena Transceivers in the U.S.

23        "To determine whether a likelihood of consumer confusion exists," courts in the Ninth

24  Circuit rely "on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark;

25  (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual

26  confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be

27  exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood

28  of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098,

1   1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)),

2   abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810

3   (9th Cir. 2003)). "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are

4   not intended to be a rote checklist." *Id.* (internal quotation marks and citation omitted).

5          Proving false designation of origin based on the same or similar trade names or symbols

6   requires the same showing of a likelihood of confusion. *See Accuride Int'l, Inc. v. Accuride Corp.*,

7   871 F.2d 1531, 1534–35 (9th Cir. 1989) ("[T]he same broad standards of protection apply to

8   trademarks and trade names. . . . [L]ikelihood of confusion is unquestionably the key to a finding

9   of infringement in either case."); *see also* 15 U.S.C. § 1125(a)(1); *Brookfield Commc'ns, Inc. v. W.*

10  *Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir. 1999) (noting that while Lanham Act § 32

11  of the (15 U.S.C. § 1114) protects registered marks, § 43(a) (15 U.S.C. § 1125(a)) also protects

12  against infringement of unregistered marks and trade dress and against a wider range of practices

13  such as false advertising, but "the analysis under the two provisions is oftentimes identical").

14         The Ninth Circuit has held that the *Sleekcraft* test is appropriate to determine likelihood of

15  confusion regarding a claim for false designation of origin. *Accuride Int'l, Inc.*, 871 F.2d at 1536.

16  But courts in this district and around the Ninth Circuit hold that in cases involving counterfeiting,

17  "it is unnecessary to perform the eight-factor evaluation because counterfeit marks are inherently

18  confusing." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL

19  2343670, at *14 (N.D. Cal. June 20, 2012) (granting TRO and OSC re preliminary injunction)

20  (citing *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004)); *Microsoft*

21  *Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015), *aff'd*, 703 F. App'x 476

22  (9th Cir. 2017) (quoting *Phillip Morris*, 352 F.Supp.2d at 1073); *Daimler AG v. A-Z Wheels LLC*,

23  334 F. Supp. 3d 1087, 1096 (S.D. Cal. 2018) (citing *Phillip Morris*, 352 F.Supp.2d 1067 at 1073).

24         A counterfeit mark is: "(1) a non-genuine mark identical to the registered, genuine mark of

25  another, where (2) the genuine mark was registered for use on the same goods to which the

26  infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946

27  (9th Cir. 2011) (citing *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708,

28  721 (9th Cir. 2005)). As Ciena has shown that this is a clear case of counterfeiting, including the

1  use of identical marks in connection with, supposedly, the same goods, there is a likelihood of

2  confusion as a matter of law.

3        Ciena also meets the standard under *Sleekcraft* to show a likelihood of confusion. Ciena

4  has used its trade name and the CIENA Marks since 1992, in connection with networking products

5  including transceivers, so the marks are strong (*Sleekcraft* factor 1). Decl. No. 1 ¶ 5-10. Wolon is

6  selling the same kinds of products as Ciena—transceivers (factor 2)—and using identical marks

7  and trade names (factor 3). And the use of identical marks and trade names to sell counterfeit

8  products shows that Wolon intends to copy them and confuse the public (factor 7). This

9  establishes that Ciena is likely to succeed on the merits of its federal trademark infringement, false

10  designation of origin, and unfair competition claims.

11        Therefore, Ciena has shown that it is likely to succeed on the merits of its federal

12  trademark infringement, false designation of origin, and unfair competition claims.

13                    **b.        State Law Claims**

14        Ciena has also demonstrated a probability of success with respect to its state law claims for

15  unfair competition and false advertising. The Ninth Circuit "has consistently held" that these

16  claims "are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News*

17  *Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). "An action for unfair competition under Cal. Bus.

18  & Prof. Code §§ 17200 et seq. is substantially congruent to a trademark infringement claim under

19  the Lanham Act. . . . Under both, the ultimate test is whether the public is likely to be deceived or

20  confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House*

21  *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted).

22        Similarly, where plaintiffs establish that they are likely to succeed on the merits of federal

23  Lanham Act claims, then they also demonstrate a likelihood of success on parallel false

24  advertising claims under California law. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*,

25  No. 14-CV-04050-MEJ, 2014 WL 6788310, at *16–17 (N.D. Cal. Dec. 2, 2014) (finding showing

26  of likelihood of success under Lanham Act sufficient to meet burden for unfair competition under

27  Section 17200 and false advertising under Section 17500).

28

[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

1     As Ciena has shown it is likely to succeed on the merits of its federal claims, Ciena has

2    also shown it is likely to succeed on its parallel claims for unfair competition and false advertising

3    under California law.

4             **2.**       **Irreparable Harm**

5     The recently enacted Trademark Modernization Act of 2020 modified 15 U.S.C. § 1116(a)

6    to state that a plaintiff seeking an injunction against trademark infringement "shall be entitled to a

7    rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the

8    merits for a violation identified in this subsection in the case of a motion for a preliminary

9    injunction or temporary restraining order." Pub. L. 116-260; *Vineyard House, LLC v.*

10   *Constellation Brands U.S. Operations, Inc.*, No. 4:19-CV-01424-YGR, 2021 WL 254448, at *14,

11   n. 16 (N.D. Cal. Jan. 26, 2021). Even before the recent change in the law to presume irreparable

12   harm, the Ninth Circuit recognized that "intangible injuries," including loss of goodwill, can

13   constitute irreparable harm. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944

14   F.2d 597, 603 (9th Cir. 1991). More specifically, the sale of counterfeited products may cause

15   irreparable harm because such sale may "prevent [Plaintiff] from controlling the reputation of its

16   highly recognizable" brands. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081

17   (E.D. Cal. 2009) *aff'd*, 348 F. App'x 288 (9th Cir. 2009).

18     Here, Ciena has demonstrated that it spent decades investing in and building the goodwill

19   in its brand and reputation for designing, making, and selling high quality products. *See* Decl. No.

20   1 ¶¶ 5-10. Wolon's sales of counterfeit Ciena transceivers mislead customers, and they threaten

21   irreparable harm to Ciena's goodwill that cannot be adequately addressed by awarding damages

22   after-the-fact. This is particularly true as Wolon's counterfeit products were not subject to the

23   same rigorous quality control measures and safety testing, and appear to be inferior to genuine

24   Ciena transceivers. *See* Decl. No. 2 ¶¶ 7-9, 17-19. Thus, temporary and preliminary injunctive

25   relief are appropriate to prevent further irreparable harm to, and ensure that Ciena can regain and

26   maintain control over, its reputation and goodwill.

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

1

### 3.   Balance of Equities

2    "Courts must balance the competing claims of injury and must consider the effect on each

3    party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 7, 24 (2008).

4    "[C]ourts will not shy away from issuing" preliminary injunctive relief "where to do so would be

5    to aid a second comer who has sought to trade upon the efforts and good will of the first comer."

6    *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977). Here,

7    the balance of equities tips strongly in favor of the issuance of injunctive relief.

8    A TRO or preliminary injunction will impose no legally cognizable hardship on Wolon.

9    "Where the only hardship that the defendant will suffer is lost profits from an activity which has

10   been shown likely to be infringing, such an argument in defense 'merits little equitable

11   consideration.'" *Sream*, 2019 WL 2180224, at *10 (quoting *Triad Sys. Corp. v. Se. Exp. Co.*, 64

12   F.3d 1330, 1338 (9th Cir. 1995) (superseded on other grounds)); *see also, United Tactical Sys.*,

13   2014 WL 6788310 at *23 (disregarding claimed hardship from loss of infringing sales).

14   Wolon has no right to sell counterfeit Ciena transceivers or use the CIENA Marks.

15   Therefore, any claimed hardship of its being barred from doing so must be disregarded. At the

16   same time, every sale of a counterfeit transceiver by Wolon is a lost sale for Ciena that detracts

17   from the value of its trademarks and goodwill and risks serious and irreparable harm to its

18   reputation (not to mention the public) by being inferior products. In the past, Ciena has

19   encountered multiple instances of counterfeit Ciena Transceivers that posed risks and harmed

20   customers, and harmed Ciena's reputation and goodwill as a result. *See* Decl. No. 1 ¶ 19.

21   Accordingly, the balance of equities supports issuing a TRO and preliminary injunction in this

22   case.

23

### 4.   Public Interest

24   Public policy favors granting an injunction when there is a likelihood of consumer

25   confusion. *See Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir.

26   1982) ("In addition to the harm caused the trademark owner, the consuming public is equally

27   injured by an inadequate judicial response to trademark infringement.").

28

1    In this case public policy favors injunctive relief even more than the usual counterfeiting

2  case because Ciena has offered substantial evidence that Wolon's conduct poses a threat to health

3  and safety. Counterfeit transceivers use untested and unapproved components and manufacturing

4  processes, and as such they may not function properly and will not function in combination with

5  authentic Ciena products, and may be unsafe to use. Decl. No. 2 ¶ 7-9, 17-19; Decl. No. 1 ¶¶ 14-

6  19. Reliability and data integrity are critical to Ciena's customers, and they need to reliably and

7  securely transmit and receive sensitive data. *Id.*

8    The risk posed by counterfeit transceivers also includes physical harm. Decl. No. 1 ¶ 18.

9  Ciena's transceivers use transmitter laser technologies, which require extensive eye safety testing

10  and manufacturing calibration to ensure users' physical safety. *Id.* Counterfeit transceivers are

11  unlikely to be subjected to this testing or meet these standards. *Id.* A poorly designed transceiver,

12  such as the counterfeits sold by Wolon, can also emit excessive electromagnetic energy that

13  interferes with adjacent equipment, which could be detrimental in any environment where

14  sensitive electronic equipment is present. *Id.* Finally, packaging transceivers so as to prevent

15  electrostatic discharge from harming them is crucial to maintaining their reliability, but Wolon's

16  counterfeit transceivers are not packaged with any such precautions, making it more likely they

17  may not function properly and/or will fail. *Id.*

18    The above facts clearly demonstrate that the public interest favors injunctive relief.

19  Accordingly, Ciena's request for a TRO directed to Wolon's conduct is GRANTED.

20    **B.    Asset Freeze**

21    Ciena seeks another *ex parte* TRO freezing Wolon's assets to preserve the possibility of

22  equitable relief, including an accounting and return of its ill-gotten gains from counterfeiting. Such

23  assets include, but are not limited to, the account at China Construction Bank to which payments

24  from Ciena's investigator were made. *See* Decl. No. 3 ¶¶ 10, 13.

25    The Ninth Circuit holds that when a plaintiff seeks equitable remedies under the Lanham

26  Act, including recovery of a defendant's profits under 15 U.S.C. § 1117, a district court has

27  "inherent equitable power to issue provisional remedies ancillary to its authority to provide final

28  equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir.

1992). This includes "the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Id.* (quoting *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1364 (9th Cir.1988) (*en banc*)). The Ninth Circuit explained "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement," and affirmed the district court's granting of TROs and preliminary injunctions to freeze the defendants' assets, in addition to preventing various counterfeiting-related activities. *Id.* at 560 (quoting *Playboy Enters.,* 692 F.2d at 1275).

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Given the deceitful and secretive nature of counterfeiting, this Court and others in this Circuit routinely find that dissipation of assets is likely and grant asset freezes in such cases, particularly when defendants are overseas where they can hide assets from a potential judgment. *See Cisco Sys.*, 2020 WL 4196273, at **9-10; *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd* 970 F.2d at 563 ("[d]ue to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds"); *see also, FTC v. Affordable Media*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) (finding dissipation likely based on defendants keeping funds in the Cook Islands); *Chanel, Inc. v. Sunus Online Group, LLC*, 2014 WL 12558780, at *3 (C.D. Cal. Jan. 15, 2014) ("based on Defendants' blatant violations of trademark laws there is likelihood that Defendants would transfer or hide the illegally obtained assets in order to avoid a judgment in this action," and thus, granted a preliminary injunction freezing their assets). Other Circuits agree that asset freezes are warranted to preserve assets in counterfeiting cases, particularly overseas and/or online. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987–88 (11th Cir. 1995) (affirming preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeit Levi's jeans in China for sale in Europe); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132–33 (2d Cir. 2014) (confirming trial authority to issue TRO and preliminary injunction freezing assets of defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707,

13

709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeits).

Ciena seeks recovery of Wolon's profits from its wrongful use of the CIENA Marks in connection with sales of transceivers, among other relief, so the Court is authorized to freeze Wolon's assets under *Reebok*, 970 F.2d at 559. *See* First Am. Compl. at Prayer for Relief ¶¶ J-K, ECF __. The present action involves unauthorized use of the CIENA Marks by Wolon, in its offers to sell transceivers and on labels for the transceivers themselves, and Wolon is based in China and uses third-party eCommerce online platforms like Alibaba to market and sell its non-genuine Ciena products into the U.S. Decl. No. 3 ¶¶ 5-17. It is not only likely that Wolon can and will dissipate its assets during the pendency of this case if given the opportunity to do so, but it is also difficult if not impossible to enforce U.S. judgments in China. *See, e.g.,*
https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Enforcement-of-Judges.html (noting no treaty or convention provides for reciprocal recognition and enforcement of judgments); *Yee v. NIVS Intellimedia Tech. Group, Inc.*, No. CV 11-8472 JGB (AJWx), 2013 WL 1276024, *5 (C.D. Cal. March 25, 2013) (stating that Chinese company whose executives are Chinese residents "bore no real risk of sanctions" given the difficulty of enforcing a U.S. judgment against a Chinese national); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *5–6 (C.D. Cal. Jul. 9, 2013) (finding that the plaintiff "would face significant obstacles in enforcing any judgment against the defendants' assets in China"); *Gucci America, Inc. v. Wang Huoqing*, No. CV, 2011 WL 31191, at *16 (N.D. Cal. Jan. 3, 2011) (noting that enforcing a judgment may be difficult in China, and compelling transfer of counterfeiter's domain names to plaintiffs).

The Court's authority is not limited to freezing specific identified assets, nor to assets within this District or the U.S., and can extend to banks and other non-parties that have custody of Wolon's assets or provide payment services to Wolon. *See Reebok*, 737 F. Supp. at 1527–28 (TRO and preliminary injunction that "any banks, savings and loan associations, or other financial institutions . . . who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined from transferring, disposing of, or secreting any money, stocks or other

14
[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

1    assets of these defendants, until further order of the court" except in limited circumstances); *Gucci*

2    *Am., Inc.*, 768 F.3d at 133 (rejecting argument that plaintiff had to identify particular property

3    derived from counterfeiting before obtaining TRO and preliminary injunction freezing all assets).

4        Accordingly, Ciena's request for an Order freezing Wolon's assets, including but not

5    limited to Wolon's account at China Construction Bank, is GRANTED.

6    **C.    Seizure and Freezing of Wolon's Domain Names and Seller Identifications**

7        **1.    Freezing Wolon's Domain Names and Seller Identifications**

8        The Counterfeiting Act of 1984 permits the Court to issue an *ex parte* order for the seizure

9    of goods and counterfeit marks. 15 U.S.C. § 1116(d)(1)(A). This Court and others in this Circuit

10   recognize, in cases involving online counterfeiters, this seizure power authorizes orders freezing

11   counterfeiters' domain names and seller identifications used on eCommerce websites. *See, e.g.,*

12   *Cisco Sys.*, 2020 WL 4196273, at **10-11;*Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C06-

13   6572JSW (MEJ), 2007 WL 4973848, at *10 (N.D. Cal. Dec. 6, 2007), *report and recommendation*

14   *adopted as modified sub nom. Williams-Sonoma, Inc. v. Online Mktg. Servs., Ltd.*, No. C 06-06572

15   JSW, 2008 WL 596251 (N.D. Cal. Mar. 4, 2008) (granting order temporarily barring sale or

16   transfer of defendants' domain names); *Spy Optic Inc. v. Individuals, Partnerships &*

17   *Unincorporated Ass'ns Identified on Schedule A*, No. CV 17-7649 DSF (KSX), 2017 WL

18   10592133, at *2–3 (C.D. Cal. Nov. 27, 2017) (granting preliminary injunction barring transfer of

19   defendants' "Internet based e-commerce store businesses under their seller IDs").

20       The Lanham Act also expressly provides that in certain cases of online trademark

21   infringement, domain name registrars, who control the transfer of domain names, must deposit

22   domain name certificates with the court. *See* 15 U.S.C.§ 1114(2)(D); 15 U.S.C.§ 1125(d)(2).

23       Such relief is necessary because counterfeiters operating online can, and often will, as soon

24   as they receive notice of litigation, take steps to conceal their activities and move their illegal

25   businesses to other online channels to thwart plaintiffs' ability to obtain and courts' ability to

26   award meaningful relief, e.g., modifying domain name registrations; redirecting visitors to new

27   seller identifications or domain names; and/or transferring ownership of seller identifications and

28   domain names. *See* Decl. No. 1 ¶ 20.

1    Here, Ciena has adduced evidence that Wolon sells counterfeit Ciena transceivers through

2    third-party eCommerce marketplaces such as Alibaba ("eCommerce Websites"), using its

3    respective seller identifications on those websites, and through its own website domain at

4    www.wolonte.com ("Domain Names"). Decl. No. 3 ¶¶ 6-8, 14.

5    Moreover, an order barring Wolon from transferring its seller identifications, as well as its

6    separate commercial website maintained by Wolon itself ("Domain Names"), requiring transfer of

7    control of such domain names to a U.S.-based registrar of Ciena's choice (while legal ownership

8    remains with Wolon), and requiring deposit of domain name certificates with the Court, would

9    impose no real burden on Wolon. At the same time, it would ensure that ownership of the domain

10   names cannot be changed until this action is resolved on the merits, thereby maintaining the

11   potential for Ciena to obtain full relief. Accordingly, Ciena's request for this relief is GRANTED.

12        **2.        Redirection of Wolon's Domain Names to U.S.-Based Registrar**

13   Ciena also seeks to have Wolon's Domain Names automatically redirect to a website that

14   provides notice of and access to filings in this action or, alternatively, disable such websites. Such

15   preliminary relief has been granted in cases involving online counterfeiters. *See, e.g., Cisco Sys.*,

16   2020 WL 4196273, at *11; *Chanel*, 2011 WL 6955734, at *5–6 (granting preliminary injunction

17   directing registrar to redirect domain names to webpage with copy of documents from the action);

18   *Asmodus, Inc. v. Junbiao Ou*, No. EDCV162511JGBDTBX, 2017 WL 2954360, at *5–6, 19 (C.D.

19   Cal. May 12, 2017) (granting preliminary injunction ordering defendant to post notice of the order

20   on its websites, including that they had no affiliation with plaintiff trademark holder and could not

21   sell products with plaintiff's marks); *Otter Prod., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-CV-

22   00029-MMD, 2013 WL 5910882, at *4 (D. Nev. Jan. 8, 2013) (granting TRO ordering any web

23   hosting company, domain name registry, and/or domain name registrar getting notice to remove

24   counterfeit and infringing products from defendant's website or alternatively to disable access to

25   the website).

26   Redirecting Wolon's domain names would help prevent further infringement while this

27   case proceeds, as Wolon could not offer for sale and sell counterfeit Ciena transceivers and labels

28   through those channels. Redirecting those domain names to notice of and filings from this case

1   would also ensure that Wolon receives prompt notice of this case and the relief sought by Ciena,

2   as they would see it upon visiting their own websites. Moreover, Wolon cannot complain about

3   the potential impact of such relief, as the primary hardship would be lost profits from infringing

4   activities. Accordingly, Ciena's request for this relief is GRANTED.

5   **D.   Expedited Discovery**

6       The Counterfeiting Act authorizes expedited discovery in connection with seizure orders.

7   *See* 15 U.S.C. § 1116(d)(10)(B) (permitting the Court to modify time limits for discovery in

8   connection with a seizure order). Expedited discovery may be granted for good cause "where the

9   need for expedited discovery, in consideration of the administration of justice, outweighs the

10   prejudice to the responding party," and "good cause is frequently found in cases involving claims

11   of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D.

12   273, 276 (N.D. Cal. 2002). Such good cause is shown "where a well-known trademark . . . has

13   been counterfeited and the sources or purchasers of the counterfeit products are unknown to

14   plaintiff." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248,

15   250 (S.D. Fla. 1982).

16       Courts in the Ninth Circuit routinely find good cause for expedited discovery to enable

17   plaintiffs in counterfeiting cases to identify: 1) accounts used for and transactions associated with

18   infringing sales; 2) original sources of and pending shipments of counterfeit products; and 3) other

19   parties involved in counterfeiting activities. *See Cisco Sys.*, 2020 WL 4196273, at **11-12; *Spy

20   Optic*, 2017 WL 10592133, at *2 (ordering eBay and PayPal to identify all funds transmitted to

21   defendants' accounts and to provide plaintiffs with data and accounting of all funds, accounts, and

22   transactions); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO

23   (EX), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (granting expedited discovery to enable

24   plaintiff to ascertain sources of the counterfeit products and learn of any pending shipments of

25   such products); *Sas v. Sawabeh Info. Servs. Co.*, No. CV1104147GAFMANX, 2011 WL

26   13130013, at *6–7 (C.D. Cal. May 17, 2011) (granting expedited discovery to gather evidence for

27   preliminary injunction to stop infringement, identify others involved in counterfeiting, and prevent

28   destruction of evidence).

[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

In the present case, Ciena seeks three types of expedited discovery. First, to identify other parties from whom Wolon bought or to whom it sold counterfeit Ciena transceivers, Ciena seeks from Wolon documents showing the names, addresses, and other contact information of all individuals and entities that Wolon bought Ciena transceivers from and/or sold them to, along with quantities and prices of all such purchases and sales.

Second, Ciena seeks from any third party providing services to Wolon, e.g., any eCommerce Website, search engine, Common Carrier, or financial institution or service (including but not limited to China Construction Bank), documents concerning: 1) contact information of Wolon and all entities and individuals associated or acting in concert therewith; 2) any accounts owned or controlled by Wolon and all entities and individuals associated or acting in concert therewith; and 3) Wolon's operations, payment methods, transportation, and listing history concerning Ciena-marked products and/or products advertised using the CIENA Marks. Discovery of these entities and individuals and their accounts and services is necessary to ensure that Wolon's unlawful activities will be contained and that Ciena can promptly identify the full scope of infringing activities connected to Wolon.

Lastly, Ciena seeks disclosure of the true identities and contact information of the owners of the identified seller identifications and website domain, to the extent they may be concealed by privacy protections on the eCommerce Websites or with the domain name registrars.

As in the above-cited cases, there is good cause for such expedited discovery as Ciena has demonstrated that it needs it for the Court's consideration of a preliminary injunction, and to ensure that Ciena can identify the full scope of infringing activities and immediately halt the manufacture and distribution of inferior counterfeit products and resulting irreparable harm while this case is pending. Ciena has also demonstrated that it needs expedited discovery in order to identify potential sources for equitable relief. Moreover, given the Court's prior finding of the likelihood that Defendants may destroy or hide evidence, expedited discovery is appropriate, and Ciena may be prejudiced without it. Accordingly, Ciena's motion for expedited discovery is GRANTED.

### E.      Security

"The district court is afforded wide discretion in setting the amount of the bond, . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted); *see also, Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *17 (N.D. Cal. Apr. 12, 2019) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *Cuviello v. City of Oakland*, No. C 06-05517 MHP EMC, 2007 WL 2349325, at *8 (N.D. Cal. Aug. 15, 2007) (recommending no bond be required in part because there was no proof of likelihood of harm to the party enjoined).

Because of the clear evidence of Wolon's counterfeiting, infringement, and unfair competition, the Court finds it appropriate to issue the TRO without requiring Ciena to provide security.

### F.      Duration of TRO

The TRO will expire "at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). "The reasons for an extension must be entered in the record." *Id.* The first available date for the hearing on the Order to Show Cause regarding a Preliminary Injunction is August 26, 2021, which is more than 14 days from now. The Court therefore finds good cause to extend the TRO an additional   20   days.

The Court hereby sets a hearing on the Order to Show Cause regarding a Preliminary Injunction for August 26, 2021 at  10:00 a .m. At the hearing, Wolon must show cause why a preliminary injunction should not issue.

### G.      Alternative Service of Process

Ciena requests an order authorizing it to serve Wolon by email. For defendants located in foreign countries, courts are permitted to authorize service of process "by other means not prohibited by international agreement." Fed. R. of Civ. Proc. 4(f)(3). The only requirements under Rule 4(f)(3) are that service be directed by the court and not prohibited by international agreement.

1   *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "[C]ourt-directed

2   service under Rule 4(f)(3) is as favored as service available under Rules [4(f)(1–2)]" and does not

3   require first attempting other means. *Id.*

4          To comport with due process, courts simply need to evaluate whether a service method is

5   "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

6   of the action and afford them an opportunity to present their objections." *Id.* at 1016 (quoting

7   *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). In *Rio*, the Ninth Circuit

8   agreed that service by email was appropriate, particularly where the defendant conducted its

9   business by email. *Id.* at 1017–18.

10         As a threshold matter, service by email on defendants in China is not barred by any

11  international agreement. *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-

12  LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017). Courts in this district have authorized

13  email service and found that it is reasonably calculated to provide notice to foreign defendants,

14  including defendants based in China, where receipt is confirmed, the email addresses were

15  previously used to communicate with the plaintiffs, or the defendants operate online and use email

16  for their businesses. *Microsoft Corp.*, 2017 WL 4536417 at *5–6 (affirming that email service on

17  defendants in China was sufficient where receipt confirmed); *Carson v. Griffin*, No. 13-CV-0520

18  KAW, 2013 WL 2403601, at *1–2 (N.D. Cal. May 31, 2013) (authorizing service by email where

19  the plaintiff previously corresponded with the defendants via email); *Jenkins v. Pooke*, No. C 07-

20  03112 JSW, 2009 WL 412987, at *2–3 (N.D. Cal. Feb. 17, 2009) (same); *Facebook, Inc. v.

21  Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *1–2 (N.D. Cal. Mar. 27, 2012)

22  (authorizing email service, including in Hong Kong, where defendants operated online and relied

23  on email communications for their businesses); *Cisco Sys.*, 2020 WL 4196273, at **13-14.

24         In the present case, Wolon is based in China and operates Internet-based businesses

25  trafficking in counterfeit Ciena products. It provides email addresses for communication, and

26  ultimately negotiated and consummated transactions for sale of the infringing products obtained

27  by Ciena's investigator via electronic messaging and email. *See* Decl. No. 3 ¶¶ 14. Email service

28  is appropriate and important in the present case because of the urgency in shutting down sales of

1  inferior transceivers that threaten Ciena's reputation and the integrity of critical infrastructure that

2  relies on such products.

3       The Court therefore GRANTS Ciena's request for leave to effect service of the Summons

4  and Complaint in this action via email to Wolon at the email address it used to communicate with

5  Ciena's investigator.

6  **IV.   ORDER**

7       **A.   Temporary Restraining Order**

8       Pending further order of this Court, Wolon and its owners, principals, agents, officers,

9  directors, members, servants, employees, successors, assigns, and all other persons in concert and

10  participation with them (collectively, the "Restrained Parties") shall be immediately temporarily

11  restrained from:

12      1.  Purchasing, selling, distributing, marketing, manufacturing, or otherwise using any

13         of the CIENA Marks (as defined above), whether counterfeit or authentic, or any

14         marks confusingly similar thereto in connection with the manufacture, sale, offer

15         for sale, distribution, advertisement, or any other use of counterfeit or authentic

16         Ciena products;

17      2.  Using any logo, trade name, or trademark confusingly similar to any of the CIENA

18         Marks which may be calculated to falsely represent or which has the effect of

19         falsely representing that the services or products of any or all of the Restrained

20         Parties or others are sponsored by, authorized by, or in any way associated with

21         Ciena;

22      3.  Infringing any of the CIENA Marks;

23      4.  Otherwise unfairly competing with Ciena in the manufacture, sale, offering for sale,

24         distribution, advertisement, or any other use of Ciena products;

25      5.  Falsely representing Wolon as being connected with Ciena or sponsored by or

26         associated with Ciena or engaging in any act which is likely to cause the trade,

27         retailers, and/or members of the purchasing public to believe that any or all of the

28         Restrained Parties are associated with Ciena;

[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO

6. Using any reproduction, counterfeit, copy, or colorable imitation of any of the CIENA Marks in connection with the publicity, promotion, sale, or advertising of counterfeit Ciena products;

7. Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Ciena products and from offering such goods in commerce;

8. Diluting any of the CIENA Marks;

9. Removing from its premises, or discarding, destroying, transferring, or disposing in any manner any information, computer files, electronic files, business records (including but not limited to e-mail communications), or other documents relating to Wolon's assets and operations or relating in any way to the purchase, sale, manufacture, offer for sale, distribution, negotiation, importation, advertisement, promotion, or receipt of any products purporting to be Ciena; and

10. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (9) above.

**B.      Freezing Wolon's Assets**

Immediately upon receipt of this Order, Wolon shall be restrained from secreting any assets, and from transferring or conveying any assets held by, for, or on account of any of the Restrained Parties, and a full accounting of the restrained assets shall be provided to counsel for Ciena within three business days of receipt of this Order.

1. Immediately upon receipt of this Order, all assets and funds held by, for, or on account of any of the Restrained Parties, or in an account owned or controlled by any of the Restrained Parties, or in an account as to which any of the Restrained Parties has signature authority, shall be frozen and restrained, and a full accounting of the restrained assets shall be provided to counsel for Ciena within three business days of receipt of this Order.

2.  Immediately upon receipt of this Order, any bank, brokerage house, financial institution, credit card association, merchant account provider, escrow service, savings and loan association, payment provider, payment processing service provider, money transmission service, third-party processor, or other financial institution (including, but not limited to, MasterCard, VISA, American Express, Discover, PayPal, Inc., Alipay, Wish.com, Amazon Pay, WeChat Pay, and any correspondent, issuing, or member bank or account) (collectively, "Payment Services") holding any assets by, for, or on account of, or any balance, payable, or receivable owed to or held on account of, any of the Restrained Parties, or in an account as to which any of the Restrained Parties has signature authority, including but not limited to China Construction Bank, shall locate all accounts and funds, whether located inside or outside the United States, connected to any Restrained Parties and be restrained from releasing such funds until further order of this Court, and within three business days of receipt of this Order shall provide to counsel for Ciena a full accounting of the restrained assets.

3.  Immediately upon receipt of this Order, any eCommerce Website, retailer, wholesaler, fulfillment center, warehouse, or any business or individual that has any money, property, or inventory owned by, or receivable owed to, any Restrained Party shall hold such money, property, inventory, or receivable until further order of this Court, and shall within three business days of receipt of this Order provide to counsel for Ciena a full accounting of all money, property, inventory, and receivables being held.

**C.    eCommerce Websites**

Immediately upon receipt of this Order, any Internet store or online marketplace platform, including, but not limited to, iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, Facebook, and Dhgate (collectively, "eCommerce Websites") shall disable and be restrained from providing any services or payment to any Restrained Party, currently or in the future, in relation to any Ciena-marked product and/or product advertised using the CIENA Marks, including fulfillment of

any pending orders; transfer to Ciena's control any seller identifications associated with any of the Restrained Parties' advertisement, offer for sale, or sale of Ciena-marked products and/or using the CIENA Marks, pending final hearing and determination of this action; disable and be restrained from displaying any advertisements used by or associated with any Restrained Party in connection with the advertisement, offer for sale, or sale of Ciena-marked products or otherwise using the CIENA Marks; disable access to any Restrained Party from any platform (including, but not limited to, direct, group, seller product management, vendor product management, and brand registry platforms) of any listings and associated images of Ciena-marked products or otherwise using the CIENA Marks (including, but not limited to, any listings and associated images identified by the "parent" or "child" Amazon Standard Identification Numbers ("ASIN"), and any other listings and images of products associated with any "parent" or "child" ASIN linked to any Restrained Party or linked to any other alias of a Restrained Party being used or controlled to offer for sale products using the CIENA Marks); remove links to any online marketplace accounts on which Wolon advertises, offers for sale, or sells Ciena-marked products and/or products advertised using the CIENA Marks; take all steps necessary to prevent links to Wolon's online marketplace accounts from displaying any Ciena-marked product and/or product advertised using the CIENA Marks in search results; and within three business days of receipt of this Order provide to counsel for Ciena a statement certifying compliance with the requirements of this paragraph.

    **D.**    **Domain Names**

Immediately upon receipt of this Order:

    1.    Any registrar for any domain names owned, operated, or controlled by, or otherwise associated with, any Restrained Party (including, but not limited to, wolonte.com) (collectively, Domain Names"), shall disable and be restrained from providing any services to any Restrained Party, currently or in the future, in relation to any Ciena-marked product and/or product advertised using the CIENA Marks; deposit with a registrar of Ciena's choosing the domain certificates of any domain names owned, operated, or controlled by, or otherwise associated with, any Restrained Party pending final hearing and determination of this action; be

restrained from transferring use and control of any of the Domain Names to any individual or entity other than a registrar of Ciena's choosing; take all steps necessary to prevent Wolon from displaying any Ciena-marked product and/or product advertised using the CIENA Marks on any domain name in the registrar's possession, custody, or control; and within three business days of receipt of this Order provide to counsel for Ciena a statement certifying compliance with the requirements of this paragraph.

2. The Restrained Parties shall be restrained from modifying control of or transferring use and control of any of the Domain Names.

**E.    Internet Search Engines**

Immediately upon receipt of this Order, any Internet search engine, web host, sponsored search engine, or ad-word provider (including, but not limited to Google, Bing, Baidu, and Yahoo) (collectively, "Internet Search Engines") shall deindex, delist, or otherwise remove from its index and search results any URL owned, controlled, or otherwise associated with any Restrained Party's advertisement, offer for sale, or sale of Ciena-marked products and/or products advertised using the CIENA Marks; disable and be restrained from providing any services to any Restrained Party, currently or in the future, in relation to the advertisement, offer for sale, or sale of Ciena-marked products and/or products advertised using the CIENA Marks; disable and be restrained from displaying any advertisements used by or associated with any Restrained Party in connection with the advertisement, offer for sale, or sale of Ciena-marked products and/or otherwise using the CIENA Marks; remove links to any of Wolon's online marketplace accounts owned, operated, or controlled by, or otherwise associated with, any Restrained Party in connection with the advertisement, offer for sale, or sale of Ciena-marked products and/or products advertised using the CIENA Marks; take all steps necessary to prevent links to Wolon's online marketplace accounts from displaying any Ciena-marked product and/or product advertised using the CIENA Marks in search results; and within three business days of receipt of this Order provide to counsel for Ciena a statement certifying compliance with the requirements of this paragraph.

**F.     Common Carriers**

Immediately upon receipt of this Order, any person or company that transports or provides transportation services (including, but not limited to, United Parcel Service a/k/a UPS, FedEx, and DHL) (collectively, "Common Carriers") shall be restrained from fulfilling any shipments, accepting any shipments, or otherwise providing any services to any of the Restrained Parties, and within three business days of receipt of this Order shall provide to counsel for Ciena a statement certifying compliance with the requirements of this paragraph.

**G.     Sequestration and Inspection of Ciena-Marked Products and Products Advertised Using the CIENA Marks**

Immediately upon receipt of this Order:

1.  The Restrained Parties shall sequester and deliver to counsel for Ciena all Ciena-marked products and/or products advertised using the CIENA Marks in their inventory, possession, custody, or control to be examined and held by Ciena until further order of this Court.

2.  Any eCommerce Website (as defined above) or Common Carrier shall sequester and deliver to counsel for Ciena all Ciena-marked products and/or products advertised using the CIENA Marks offered for sale by any Restrained Party that are in its possession, custody, or control to be examined and held by Ciena until further order of this Court.

**H.     Order to Show Cause Re: Preliminary Injunction and Expedited Discovery**

Show Cause Hearing. Defendants Wuhan Wolon Communication Technology Co., Ltd. and Wuhan Wolon Cloud Network Communication Technology Co., Ltd.'s (together, "Wolon") are hereby ordered to show cause before this Court on the 26th day of August, 2021 at 10:00  a.m., why a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be issued enjoining Wolon and its principals, agents, officers, directors, members, servants, employees, successors, assigns, and all other persons in concert and participation with it, pending the final hearing and determination of this action from:

1. Purchasing, selling, distributing, marketing, manufacturing, or otherwise using any of the CIENA Marks (as defined herein) on any counterfeit or authentic product, or any marks confusingly similar thereto in connection with any Ciena products or other products. The "CIENA Marks" are:

- The "CIENA" word mark, which is registered with the U.S. Patent and Trademark Office under U.S. Trademark Registration Nos. 2,070,330 and 3,026,860; and

- The CIENA logo:



2. Using any logo, trade name, or trademark confusingly similar to any of the CIENA Marks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Wolon or of others are sponsored by, authorized by, or in any way associated with Ciena;

3. Infringing any of the CIENA Marks;

4. Otherwise unfairly competing with Ciena in the manufacture, sale, offering for sale, distribution, advertisement, or any other use of Ciena products;

5. Falsely representing Wolon as being connected with Ciena or sponsored by or associated with Ciena or engaging in any act which is likely to cause the trade, retailers, and/or members of the purchasing public to believe that Wolon is associated with Ciena;

6. Using any reproduction, counterfeit, copy, or colorable imitation of any of the CIENA Marks in connection with the publicity, promotion, sale, or advertising of counterfeit Ciena products;

7. Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Ciena products and from offering such goods in commerce;

8.  Diluting any of the CIENA Marks;

9.  Removing from its premises, or discarding, destroying, transferring, or disposing in any manner any information, computer files, electronic files, business records (including but not limited to e-mail communications), or other documents relating to Wolon's assets and operations or relating in any way to the purchase, sale, manufacture, offer for sale, distribution, negotiation, importation, advertisement, promotion, or receipt of any products purporting to be Ciena; and

10. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (9) above.

Wolon's failure to attend the show cause hearing scheduled herein shall result in the immediate issuance and confirmation of the preliminary injunction, and failure of Wolon to respond to this Order by the 16th day of ___August_____, 2021, shall result in the automatic issuance of a preliminary injunction, which shall be deemed to take effect immediately and shall extend during the pendency of this action. The Restrained Parties shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by any of the Restrained Parties in violation of any of its terms may be considered and prosecuted as contempt of this Court.

**I.      Expedited Discovery**

**1.      Wolon**

Within three business days of receipt of this Order, the Restrained Parties shall produce to Ciena a summary document showing the dates, quantities, names, addresses, and other contact information, including any and all associated email addresses, of all suppliers and customers for the preceding twenty-four months from whom they have purchased or to whom they have sold any products using the CIENA Marks.

**2.      Third Parties**

Within three business days of receipt of this Order, any Payment Service, eCommerce Website, Internet Search Engine, Common Carrier, or any other non-party that has information about the Restrained Parties shall produce to Ciena expedited discovery, including copies of all

documents and records in such person's or entity's possession, custody, or control relating or referring to:

1. the names, addresses, and other contact information, including any and all associated email addresses, of any of the Restrained Parties;

2. the nature of any of Wolon's operations (including, but not limited to, identifying information associated with any Internet stores or online marketplace accounts), methods of payment, transportation, and listing history concerning the advertisement, offer for sale, or sale of Ciena-marked products and/or products advertised using the CIENA Marks;

3. any online marketplace accounts registered by Wolon, along with the true identities and contact information of the registrants of each online marketplace account to the extent the privacy protection service for any of Wolon's Internet stores, seller identifications, online marketplace accounts, commercial Internet websites, store URLs, and email addresses has concealed the registrant's identity and contact information;

4. any financial accounts owned or controlled by any of the Restrained Parties, including such accounts residing with or under the control of any Payment Service (as defined above);

5. the names and electronic and physical addresses of every owner and employee of each of the Restrained Parties; and

6. any other documents concerning or relating to any of the Restrained Parties.

**J.      Alternative Service of Process**

Service of the Summons and Complaint and of this Order, together with copies of the papers in support thereof, shall be made within five (5) court days of the undersigned date on Wolon by delivering true copies thereof by email to sales01@wolonte.com, and that such service be deemed sufficient service.

1

        IT IS SO ORDERED.

2

3

4   DATED:     July 23     , 2021

5                                            Hon. Edward J. Davila
                                             United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR TRO